(October 7, 1915.)

## C. L. TOYER, Treasurer and Ex-officio Tax Collector in and for Minidoka County, and MINIDOKA COUNTY, Plaintiffs, v. WALTER H. COPP, Treasurer and Ex-officio Tax Collector, in and for Lincoln County, and LINCOLN COUNTY, Defendants.

[152 Pac. 210.]

MANDATE—CREATION OF NEW COUNTY—APPORTIONMENT OF DEBT—PAYMENT OF—STATUTORY CONSTRUCTION.

1. Under an act creating Minidoka county from a part of the territory of Lincoln county (Sess. Laws 1913, p. 5), the bonded indebtedness of Lincoln county was to be apportioned in accordance with the provisions of said act.

[As to apportionment of debts on severance or annexation of counties, see note in 20 Am. St. 678.]

2. Under the provisions of sec. 6 of said act, the bonded indebtedness of Lincoln county was to be ascertained and apportioned between Minidoka county and Lincoln county, and it was ascertained and determined that Minidoka county's proportion of said indebtedness was $45,708.05, together with interest, a part of which had not yet accrued.

3. Under the provisions of sec. 10 of said act, the county commissioners of Minidoka county were required to make provisions for the payment of the bonded indebtedness apportioned to it "by levy and taxation at the times fixed by law for so doing, and in the same manner as the county commissioners of Lincoln county could or should have done had Minidoka county not been created," and such tax, when collected by the officers of Minidoka county, should be paid over to the treasurer of Lincoln county, and such money be applied by the treasurer of Lincoln county to the payment of Minidoka county's proportionate part of such indebtedness.

4. *Held,* that Minidoka county could not, under the provisions of said act, compel the treasurer of Lincoln county to accept the full amount of said apportioned bonded indebtedness with accrued interest thereon to the 1st of September, 1915, on that date, since said bonded indebtedness was not due, and the interest to accrue on such debt subsequent to said date was a part of such apportioned indebtedness and must be paid by Minidoka county.

5. *Held,* that by the provisions of said act the legislature intended that Minidoka county should levy and collect taxes sufficient

each year to pay its proportionate part of such bonded indebtedness as said bonds became due, in the same manner as Lincoln county was obligated to do under the provisions of said bond issue, and not otherwise.

Application for a writ of mandate to compel the treasurer of Lincoln county to receive the proportionate part of the bonded indebtedness of Minidoka county that was apportioned to it under the provisions of the act creating Minidoka county, with interest accrued to September 1, 1915, and before said bonds became due and payable. Alternative writ issued. Peremptory writ denied and alternative writ quashed.

Homer C. Mills, for Petitioners.

Sec. 6 of the act creating Minidoka county in effect provides that Minidoka county is liable *in praesenti* to the old (Lincoln) county for its share of the debt, though part of the debt is not due. (*Board of Commrs. of Cheyenne County v. Board of Commrs. of Bent County,* 15 Colo. 320, 25 Pac. 508.) Sec. 10 of said act is practically identical with part· of the act creating Gooding county (sec. 10, chap. 4, Laws 1913), and that section was construed by the supreme court of Idaho in the case of *Frazier v. Hastings,* 26 Ida. 623, 144 Pac. 1122, to mean that the new county had the right to issue funding bonds for the purpose of taking up and paying the bonded indebtedness apportioned to the new county and belonging to the county out of which the new county was created. The right of a new county to issue bonds to provide funds with which to discharge the bonded indebtedness assumed by it was specifically recognized by this court in the case recently decided of *Jones v. Power County,* 27 Ida. 656, 150 Pac. 35.

A new county created from territory of another county is not liable for interest on its assumed bonded indebtedness to such county in the absence of express legislation to the contrary. (*Beals v. Board of Supervisors of Amador County,* 28 Cal. 449; *Tulare County v. Kings County,* 117 Cal. 195, 49 Pac. 8; *Holliday v. Sweet Grass County,* 19 Mont. 364, 48 Pac. 553.)

Harlan D. Heist, for Defendants.

A bond cannot be paid before maturity without the consent of the payee. (*Davis v. County of Yuba,* 75 Cal. 452, 13 Pac. 874, 17 Pac. 533.)

The respondents have no authority to accept the amount tendered, for the reason that they would by accepting the same increase the amount of the indebtedness of Lincoln county in violation of House Bill No. 180, Sess. Laws of 1915, at p. 71.

Lincoln county is not by law authorized to accept money from Minidoka county for payment of bonds before the maturity thereof. "Actions in contract may be maintained only in accordance with the rights of the parties as shown by the contract." (1 Corpus Juris, 951; 1 Cyc. 739.)

SULLIVAN, C. J.—This is an original proceeding to procure the issuance of a writ of mandate commanding the defendant treasurer and tax collector of Lincoln county immediately to accept and receive the sum of $46,191.75 in full payment of the bonded indebtedness of said county, assumed by Minidoka county on its creation as a new county from a part of the territory of Lincoln county, together with interest due thereon to September 1, 1915.

The alternative writ was issued and made returnable on September 20, 1915, when the case was presented on stipulated facts, which facts are substantially as follows:

Minidoka county was created out of a part of the territory of Lincoln county by an act of the legislature approved January 28, 1913 (Sess. Laws 1915, p. 5). Pursuant to the provisions of sec. 6 of said act, the bonded indebtedness of Lincoln county was to be ascertained and apportioned, which was done on July 23, 1915, when it was ascertained that there remained unpaid on Minidoka county's proportion of said bonded indebtedness the sum of $45,708.05, exclusive of interest. On July 23, 1915, the board of county commissioners of Minidoka county met in special session and determined that said $45,-708.05, together with accrued interest, constituted a binding

and subsisting obligation on Minidoka county, and made and entered of record a certificate of such determination, and thereupon made and entered a resolution declaring that they deemed it advisable and for the best interest of the county that funding bonds of Minidoka county in the sum of $46,000 be issued and sold to provide funds with which to pay and discharge a like amount of Minidoka county's proportion of said bonded indebtedness, and authorized the issuance of bonds for that purpose. Thereupon negotiable funding bonds of said county aggregating the sum of $46,000 were issued, which bonds were sold and the cash received therefor.

On or about August 30, 1915, Minidoka county, through its officers, tendered Walter H. Copp, the defendant treasurer, the sum of $46,191.75 in full payment of said assumed bonded indebtedness due Lincoln county, which represented the principal and interest in full to September 1, 1915. Lincoln county through its officers refused to accept the said sum and returned the same to Minidoka county.

At the time that sum was tendered to Lincoln county as Minidoka county's proportion of said bonded indebtedness, the major portion of Lincoln county's bonds had not matured, a part of them drawing interest at the rate of $5\frac{1}{2}\%$ and a part at the rate of 6% per annum.

The question presented is whether under the provisions of said act Lincoln county is obliged to accept said sum in full payment of Minidoka's proportion of such indebtedness, regardless of the maturity of the Lincoln county bonds.

There is no question under the law but that the legislature had full authority to require the bonded indebtedness of Lincoln county to be apportioned as provided by said act.

Sec. 10 of said act is as follows:

"The county commissioners of Minidoka county shall make provision for the payment of the bonded indebtedness apportioned to it, by levy and taxation at the times fixed by law for so doing, and in the same manner as the county commissioners of Lincoln county could or should have done had Minidoka county not have been created; and such tax when levied and collected by the officers of Minidoka county shall

immediately be paid by the tax collector of Minidoka county to the treasurer of Lincoln county, who shall issue to him a proper receipt therefor, and such moneys shall be by the treasurer of Lincoln county applied to the payment of the indebtedness for which it was levied and collected by Minidoka county."

By the provisions of said section the county commissioners of Minidoka county are required to make provision for the payment of the bonded indebtedness apportioned to it by levy and taxation at the times fixed by law for so doing, and in the same manner as the county commissioners of Lincoln county could or should have done had Minidoka county not been created. Lincoln county is obligated to pay said bonded indebtedness at the time of its maturity with interest accrued at that time, and it was clearly the intention of the legislature not only to require Minidoka county to pay its proportional part of the principal of said bonds, but its proportional part of the interest that would accrue up to the time they become due or are paid. To permit Minidoka county to discharge its proportional part of said bonded indebtedness by paying to Lincoln county on the first of September, 1915, the principal of said bonds and the interest accrued up to that date, would certainly be unjust to Lincoln county, unless Lincoln county could pay and discharge such bonds at that date, which it evidently could not do since said bonds had not yet become due.

This method of payment by Minidoka county was not contemplated by the legislature, since it would leave Lincoln county to pay all interest that would yet accrue on the proportional part of said bonds that Minidoka county is obligated to pay, until they become due. Such was not the intention of the legislature. The intention clearly was that Minidoka county should pay its proportional part of the bonded indebtedness of the mother county, including interest yet to accrue upon the bonds until they become due. Said act does not contemplate that bonds shall be issued by Minidoka county to pay off, at once, its proportional part of said bonds, leaving the mother county to pay all interest that may

thereafter accrue on the bonds. The section above quoted clearly indicates that the payment of said bonded indebtedness was to be by a tax levied each year at the time fixed by law for making such levy, and in the same manner that the county commissioners of Lincoln county could or should have done had Minidoka county not been created, for the payment of said bonds. And it is further provided that "such tax when levied and collected by the officers of Minidoka county shall immediately be paid by the tax collector of Minidoka county to the treasurer of Lincoln county," and that such money shall be by the treasurer of Lincoln county applied to the payment of the indebtedness for which it was levied and collected.

Under the law, a tax was required to be levied each year by Lincoln county for the payment of the interest on said bonds and for a sinking fund with which to pay the principal, and it was the intention of the legislature that the proper officers of Minidoka county should levy each year a tax sufficient to pay its proportionate part of the interest on the bonded indebtedness as it became due and its proportionate part of the principal as it became due, and it was not the intention that Minidoka county should issue and sell bonds for the payment of its proportional part of said indebtedness before the same became due and leave the mother county to pay the interest that would accrue on such proportionate part of said indebtedness until it became due.

A different question would be presented if Minidoka county's proportionate part of said bonded indebtedness was already due. In that case Minidoka county might make proper provision for the payment of the then due principal and interest.

It is stipulated in the agreed statement of facts that the interest to accrue on Minidoka county's proportional part of said bonded indebtedness from September 1, 1915, until maturity would, in addition to the sum tendered, approximate the sum of $13,760.35, and it nowhere appears that the bondholders would be willing to surrender their bonds and accept payment thereof on September 1, 1915, or at any time before

they become due, and the presumption is they would not do so, hence Lincoln county would have to pay that amount of interest.

While it is true, if Lincoln county accepted the amount tendered it would have that money on hand, there is no provision of law authorizing Lincoln county to loan said money until said bonded indebtedness becomes due. The only authority Lincoln county has in regard to the money raised by Minidoka county to pay its proportional part of the debt is to receive it as provided by law and pay it over to the bondholders, as stipulated in the bonds. Lincoln county has no authority to receive the money long before the bonds are due, and hold it or loan it until said bonded indebtedness becomes due.

There is nothing in the case of *Frazier v. Hastings,* 26 Ida. 623, 144 Pac. 1122, in conflict with the views expressed in this opinion. That case involved the funding of a portion of the bonded indebtedness of Lincoln county, not the payment of the debt to Lincoln county before the same became due and thereafter requiring Lincoln county to pay the interest that might accrue prior to the debt's becoming due.

We therefore conclude that the peremptory writ of mandate should not issue, and that the alternative writ heretofore issued must be quashed, and it is so ordered, with costs in favor of the defendants.

Budge and Morgan, JJ., concur.